Mueller v. Pew, 127 Wis. 288.

MUELLER, Respondent, vs. PEW and others, Appellants.

*February 1—February 23, 1906.*

*Wills: Probate: Undue influence: Mental capacity: Evidence: Declarations of testator: Appeal: Findings, when disturbed: New trial: Newly-discovered evidence.*

1. On proceedings for the probate of a will, the evidence as to undue influence and mental capacity, stated in the opinion, is *held* to present no such clear and overwhelming preponderance against the findings of the trial court as to justify reversal.
2. On proceedings for the probate of a will, declarations of the testator tending to show the exertion of undue influence over him by the principal beneficiary are inadmissible, and, even if admitted, are not evidence of the facts so narrated by him.
3. In proceedings for the probate of a will, on an issue as to undue influence exerted on the testator, it is not sufficient to show that the testator's reason was convinced by persuasion or argument, if it is by his own will and intention that he carries that decision into effect.
4. In proceedings for the probate of a will, no reversal of a judgment admitting the will to probate can be predicated on the refusal of the court to take the verdict of the jury that sat on the trial of the cause.
5. After a will had been admitted to probate the contestants made a motion for a new trial on the ground of newly-discovered evidence predicated on the affidavit of one of contestant's witnesses to the effect that after giving her testimony she was offered a large sum of money if she would reverse it. There was nothing but suspicion to suggest that the offer came from any one in the interest of proponent. *Held,* that the motion for a new trial was properly denied, and, if a new trial was granted, such evidence would be inadmissible.

6. In such case there was also an affidavit of an employee of one
   of the contestants to the effect that, the morning after the death
   of testator, he saw proponent tear up a typewritten paper, and
   heard her say: "This is the last one. Now let them look if
   they want to." This testimony was thoroughly contradicted,
   both by direct evidence and by circumstances, and the em-
   ployee's character was shown to be such as to entitle his state-
   ments to little weight. *Held*, in the absence of very much more
   direct evidence of the existence of a later will, that it could not
   be established by such testimony.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Contest over will of Matthias Mueller, deceased, made the
12th day of November, 1896, when he was sixty-three years of
age, and two years and seven months before his death on June
11, 1899. The grounds of attack were mental incompetency
and undue influence exerted by his wife, *Appolonia,* the pro-
ponent. The will disposed of approximately $30,000 worth
of property; gave $500 to each of testator's seven children;
and to the five children of a deceased daughter $100 each;
and the residue to the proponent. The testator went to an ac-
quaintance, Kircher, who was in the insurance and loan busi-
ness, and requested him to draw his will, and stated to him
the terms thereof with the names of all the beneficiaries, ex-
cept that he remembered the name of one of his grandchildren
only as Maggie, and was not sure as to her baptismal name,
which, however, he promised to obtain so that it might be in-
serted. Thereupon Kircher, in the absence of testator, made
or procured to be made a draft of such will, for which testator
called at an appointed time, and which he took away with him
and later brought back, gave the name of the unnamed grand-
child as Margareth, which was inserted, and then executed the
will in the presence of Kircher and his clerk. A large amount
of evidence was offered by the contestants tending to show
that testator was, in 1896, a sufferer from Bright's disease;
that he had retired from business two or three years before,

and that many of his acquaintances noticed more or less imperfection of memory and lack of coherence in his conversation, and general feebleness, both mentally and physically, as compared with previous years. Contestants also offered evidence of many statements by deceased that his wishes as to disposal of his property, either by gifts to his children or by will, were opposed by his wife and that he could not act against her wishes. Such evidence was objected to as inadmissible upon the issue of undue influence, but perhaps proper upon mental condition. It was received subject to such objections and without ruling. There was also expert evidence from physicians, based upon various hypotheses, tending on the one hand to deny, and on the other to assert, testamentary capacity. On the issue of undue influence, except for a few trifling instances of evident obedience in household affairs by testator to his wife, the contestants' evidence mainly consisted of testimony of several of the contesting children to admissions made by the proponent that the will had been made in accordance with her requests or demands, and differently from the scheme to which testator himself was originally inclined. In defense, the making of any of these admissions was denied. The narrative of the transactions between testator and the scrivener, at which the former's wife was not present, was relied on, and the testimony of at least one witness that some two years after the making of the will testator told him of it, and expressed his belief that it was in accordance with justice and fairness. The will was admitted to probate by the county court and, upon appeal and new trial before the circuit court and a jury, at the close of the evidence the jury were excused from rendering any verdict, and the court made findings in favor of mental capacity and against undue influence, and affirmed the order of the county court. From that judgment several of the children of testator by a former wife appeal.

For the appellants there was a brief by *Fiebing & Killilea* and *Roemer & Aarons,* and oral argument by *H. J. Killilea.*

For the respondent there was a brief by *Nath. Pereles & Sons,* attorneys, and *Guy D. Goff* and *Emil G. Rahr,* of counsel, and oral argument by *Mr. C. F. Hunter* and *Mr. Rahr.*

DODGE, J. After careful examination of all the evidence, of much of which a summary is set forth in the statement of facts, we cannot bring ourselves to the view that there is any such clear and overwhelming preponderance against the findings of the court as to justify us in reversing them under the rules so often declared. Of course, the declarations made by deceased tending to show the exertion of undue influence over him by his wife were inadmissible and, even being admitted, were not evidence of the facts so narrated by him. *Loennecker's Will,* 112 Wis. 461, 88 N. W. 215. The testimony to admissions made by proponent was denied by her and the conflicting witnesses were before the trial court for its observation. The transactions attending the giving of directions to the scrivener and the execution of the will, all in the absence of the proponent, strongly refute that coercion and duress destroying the testator's freedom of will and action which is necessary to support the charge of undue influence. It is not sufficient that testator's reason is convinced by persuasion or argument, if it is by his own will and intention that he carries that decision into effect. *In re Jackman,* 26 Wis. 104; *Deck v. Deck,* 106 Wis. 470, 82 N. W. 293. On the question of mental capacity there is undisputed proof of many actual transactions by the testator near and subsequent to the date of the will entirely inconsistent with that state of mental decadence and inability which incapacitates one to make a will. These might well have convinced the trial court of his competency as against even less doubtful opinion evidence than that introduced by contestants in this case, especially referring to that of the medical experts which was based on the much disputed hypothesis of inability to remember or talk coherently. *In re Butler's Will,* 110 Wis. 70, 78, 85 N. W. 678.

Further discussion of these questions of fact would be unprofitable. It is all summed up in the statement already made that we find no preponderance of evidence against the findings and therefore cannot disturb them.

No reversal can be predicated on declining to take verdict of the jury. Such verdict would have been advisory merely, leaving the duty still upon the trial court to decide all questions of fact according to his own judgment. How the situation could have been varied to the benefit of appellants by receiving such a verdict is not apparent.

A motion for new trial on the ground of newly-discovered evidence was predicated on an affidavit of one of contestants' witnesses that, after giving her testimony, she was offered a thousand dollars if she would reverse it. There is nothing but suspicion to suggest that the offer came from any one in the interest of the proponent. Hence such testimony would be wholly inadmissible if a new trial were granted. There was also an affidavit of an employee of one of the contestants to the effect that he saw proponent tear up a typewritten paper the morning after her husband's death, and heard her say to her daughter: "This is the last one. Now let them look if they want to." This is supposed in some way to justify a suspicion that such paper may have been a later will. It is entirely obvious, however, that, in the absence of very much more direct evidence of the existence of such a document, this testimony could by no means establish it. Hence no different result could be expected if such testimony were admitted. It should perhaps be said that the statement of this employee was very thoroughly contradicted, both by direct evidence and by circumstances, and his character was shown to be such as to entitle his statements to very little weight.

Without considering the more technical grounds which would support the conclusion of the court on this motion, we think it was properly overruled for the reasons above stated.

*By the Court.*—Judgment affirmed.